And we'll call our next case. Lee v. Sixth Mount Zion Baptist Church, appellate number 17-3086. Good morning, Your Honors. May it please the Court, my name is Greg Zeff. I represent Reverend Dr. David Lee, the appellant in this matter. And I'd like to reserve three minutes for rebuttal. That would be great. Thank you. Thank you. This matter involves a contract for employment between the Sixth Mount Zion Baptist Church of Pittsburgh and my client, Reverend Dr. Lee. Reverend Lee was terminated by the church on January 11, 2015. The parties had executed... We're well aware of the facts. Thank you. And we're well aware of Judge Fisher's opinion. I guess I'd ask you how, after Hosanna Tabor, although it's said we're not deciding breach of contract cases, but how could the Supreme Court reason around the ministerial exception here? Your Honor, I would submit that the ministerial exception itself doesn't actually apply to this case. This is an excessive entanglement issue that is before the Court rather than a ministerial exception. But the ministerial exception deals with both not interfering with the free exercise of the religious entity as well as ensuring courts don't entangle themselves into the decision-making of that entity. Exactly, Your Honor. And so the ministerial exception does cover entanglement. And if this is an entanglement case, how can we get involved? The answer, if I can answer the first part of the question and the second part of the question. Of course. The ministerial exception relates, as Petruska says, which, of course, comes before Hosanna Tabor, but does track it very well, both cases track very well, that the ministerial exception applies to the hiring and termination of ministers as it relates to whether courts are going to get involved and whether or not they should be hired, terminated, or kept on. This case does not involve that. This case involves a contract as to what remedies are to be administered if the minister is terminated. Wait, wait, wait. He's complaining that he was wrongfully terminated, correct? Your Honor, he is complaining that a contract was breached as to the terms of what happens if he's terminated. Well, it has to be based upon a wrongful termination, doesn't it? Not necessarily, Your Honor, because Well, how do you have rights and remedies arising from a termination if the termination is appropriate? Well, there are two things listed in the contract. One is if it's for cause and one is if it's not for cause. And this is a for cause circumstance from your adversary's point of view? For the adversary, that's correct, Your Honor. Because from their point of view, a material breach. That's right. And so that's what's in front of us. And that is what's in front of you, Your Honor, and that is not the ministerial exception I would submit. It is the excessive entanglement issue that we're really dealing with because we're not My initial question is how do you get around Hosanna Tabor? Sure. So let's go there. Hosanna Tabor clearly doesn't say that you can't have a contract. The language itself specifies that. In fact, it says not. But when you look at the basis for his being terminated, i.e., his failure in spiritual stewardship, failure in spiritual stewardship, does that not implicate all of the religious concerns in Hosanna Tabor? Failure in spiritual stewardship has to have some type of specific addition to that. In any termination of any minister, there's a failure of spiritual stewardship. Not necessarily if someone stole money from the church. Maybe they're wonderful at the pulpit, but they're not so good in the piggy bank. That's the exact same thing, Your Honor. In this case, the comments are there were financial issues, there were attendance issues. There were spiritual shepherdship issues, too. And how is the district court to say that this is appropriate spiritual shepherdship and this isn't? They're not. And the answer to that question, Your Honor, is if there was a trial in this case, the question would be presented to any witness, why is he not here? He's not here because he failed in attendance. Yeah, but you fail in attendance because you're not leading in the way you want or maybe they don't like your sermons, and that has to do with doctrine. Failure to attract new souls to Christ, to cultivate new ambassadors for Christ. There has to be something. It was on the table basically said we're not going to make a congregation have a minister that they don't want. And we're not here to say that he should be reinstated. We're not here to say any of that. To your exact point, there is no religious doctrine involved in this case. When the word spirit is used, that doesn't imply that there is a doctrine. No one is saying here that his sermons were bad. No one is saying here that he didn't lead the congregation in any doctrinal manner. Well, how does a decrease in Sunday morning worship attendance occur? A 32% decrease in Sunday morning worship attendance. Are the courts supposed to figure out why? It seems to me the reason is he wasn't what the congregation wanted. They weren't attracted to him. And Hosanna Taylor says we're not going to make them have a minister that they don't want. But what you just said, Your Honor, is not spiritual in any way, is it? What you just said is they didn't want him anymore. If people get up and testify in a courtroom, I didn't like the way he was operating. That's not spiritual. If they get up and say I don't like the way he was baptizing children, that's different. And that's not the testimony in this case. The evidence in this case is that the attendance was down and the financial issues were down. And your argument is you say in your brief that it was not Reverend Lee's fault. Correct. And your adversary presumably is going to offer evidence that says why it was his fault and to justify the false cross-termination. Can you represent that there won't be testimony? Because you say in this case I've gone to trial. Let's talk about what trial would look like. They're going to put on evidence to explain why the decreases in membership and their statements about fair and improvised spiritual leadership and the decrease in contributions occur. And presumably they're going to be providing evidence about people's impressions of how he pastored to the collective. How can a court be involved in that? Isn't that entanglement? Well, the answer is it's entanglement, but it's not excessive entanglement. And there's a difference. And as your example cites, if a parishioner gets on the stand and says I didn't come to his services because I didn't like the way he was preaching, I would submit that that's an acceptable answer. I think if we're drawing a distinction between doctrinal and neutral basis, but I still get back to Hosanna Table and step back as to what it said. And it said we agree there is this exception. The members of the religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister without any statement as to why they're unwanted or punishing a church for failing to do so intrudes upon more than a mere employment decision.  Depriving the church of control over the selection of those who will personify its beliefs. Now, doesn't that indicate that the courts are supposed to be hands off when it comes to the hiring or firing? Except Petruska fills the gap on that, Your Honor. Hosanna Table is referring to a statute. It's referring to Title VII. And it's saying this government can't come in and force a religion to be punished or keep someone or pay money if they let someone go for religious reasons. What Petruska says is that, again, with the neutral principles, if it's a contract, there's a difference. And it's a big difference because it's a voluntary situation. But what's left of Petruska? Petruska was decided six years before Hosanna Table. I think everything in Petruska is left. In fact, Petruska tracks what Hosanna Table did. Petruska threw out the Title VII claims, just as Hosanna Table did. And Petruska said, well, we have something else here. We have a contract claim, which is a voluntary issue. And in doing that, if you look at Hosanna Table, Hosanna Table actually carves that out and says, we're not going to decide what Petruska decided, whether a contract is something that can be used. But Petruska was decided a motion to dismiss. And later in the opinion, the court makes an observation that says, the resolution of the dispute may involve excessive governmental entanglement with religion. If that's the case, then perhaps we have to revisit how far this case can possibly proceed. So Petruska is procedurally in a different posture. And it does contemplate what Hosanna Table was cautioning us about, which is we shouldn't be foisting decisions about who leads the church or questioning the reasons for those decisions and question pretexts. So I'm not sure Petruska actually helps you because it's procedurally different. And we're now past that. We're at summary judgment with a factual remedy. And you're correct, Your Honor. So the analysis would be the same, though. The analysis would be whether or not there's excessive entanglement. And let me point out why there's a- Well, it says specific resolution does not turn on ecclesiastical inquiry. That's what we don't want. We don't want to go into this case. Right. And that's why what Judge Schwartz points out about the motion to dismiss is important, Petruska. Let me point out factually here what was going on. When plaintiff filed a motion for summary judgment, the defense responded. Nowhere in that response was an issue of we have to say something here about spirit or religion. Everything that was responded to had to do with facts. But how right was that raised as an affirmative defense? Not just raised as an affirmative defense, Your Honor, but factually. The defense never said or raised the issue in their response. But the district judge, in trying to decide the case, realized that she was being required to rule on matters that involved religious doctrine, which involved is this a minister who is pleasing the congregation of the church. And so she said this is a question that needs to be decided in this case before I, as a district judge, can make a decision without getting too entangled in religion. So she gave you the opportunity. She did. So the matter was brought before the court and decided by the court. And if you look at the opportunity given to the defense in raising those issues, raising the issue of religion, saying they didn't like the way he preached, they didn't like the way he baptized, they didn't like the way he performed religious activities, that's not in any of their briefing. That's not in any of their arguments. To this day, what is it about his religious endeavors that were not liked or, and I see I'm running out of time. If I may just finish up this thought. What is it that is religious in this case? The appendix before the district court included at A151, for example, failures in spiritual stewardship, and then continues by saying, it's a quote from Matthew, and then quote, to attract new souls to Christ, close quote, et cetera. So, I mean, before the district court was the justification why they believed it was a material breach.  I understand your position, your adversaries weren't relying upon it in response to your motion for summary judgment. But the court was confronted with it, and with Hosanna to bar. How could the court ignore that? May I just say I'm out of time? The answer is, and I think I said it in my brief, the word spiritual, the words, you know, you failed us as a minister, you failed in your stewardship spiritually, are not too entangling. And my point is it's. The jury would have to determine whether it was spiritual or not. We're asking a court with its adjunct and through the jury to make that decision, and isn't that exactly what we're not supposed to do? And the answer is, Your Honor, if they say I don't like him because I don't like the way he was preaching, that's the end of the inquiry. As the lawyer on the other side, I can't question that. It's a matter of credibility at that point. And I don't mean in any way to demean religion in any way, but if a yoga instructor was fired for not being spiritual and not bringing spiritual stewardship, because there's an element of spiritualness in yoga. Then you're getting as to whether they're a minister to begin with, and there's tons of cases on who falls out of that category. If your client falls squarely into the ministerial category. And we're conceding that, of course. But my point is those words alone, those magic words, shouldn't be able to be used as a shield, especially in this case, to stop a secular contract that was volunteered from being enforced in court. Because there was a volunteer in this case. There was no need for them to have a contract. If they didn't have a contract, we wouldn't be here today. All right. Thank you, Your Honor. My name is Daniel Blomberg. May it please the Court. I represent Six Mountain Zion Missionary Baptist Church of Pittsburgh. I'd just like to pick up two things from the previous discussion, starting with Judge Schwartz's questions regarding what kind of trial we have to have here. And my friend on the other side says that we just have to pretend that the church isn't religious and say that these issues that dealt with diminished registered membership of the church, diminished attendance at worship services, diminished tithes, are somehow nonreligious considerations and that a trial court can hold a trial that will allow it to assess the credibility of the church's judgment that this was a matter of spiritual leadership failure. Setting aside the inherent religiosity of membership decisions and tithing decisions and worship attendance decisions, which I believe this Court has addressed in part in the Askew case, the church made a judgment based on those facts. The judgment that the church made was that the Reverend Lee's leadership was not providing the spiritual guidance that the church needed. And that's precisely what Hosanna Tabor says civil courts cannot gainsay. Hosanna Tabor did leave open the breach of contract provision. And we did say in Petresca these are voluntary. Do we take away from individuals and entities the right of contract to deal with each other on the terms as they might agree in a contract? Not at all, Your Honor. And you're correct that Hosanna Tabor wasn't a contract case, so it didn't address the contract issue. But what Hosanna Tabor did do is give us the framework for how we analyze these matters and tells us that the free exercise clause absolutely guarantees the right of the church to choose their religious ministers. And the establishment clause prevents the government from interfering in that choice. How would you distinguish the Gregorio case? The Gregorio case? Your Honor, I believe that in that case you had a different form of contract. And I think the other element of that case is the stage of the case as in the Petresca matter. So I think the issue here in looking at, for instance, the Petresca matter, the rule that Petresca set out was that any claim that limits the right of the church, the religious organization, to select their religious minister fails under the ministerial exception. And then where there had been a voluntary waiver, a promise made, that the church or the religious ministry would allow a minister to stay on in a certain capacity, in that instance the church had waived its right. That's not the case here. The promise here was that Reverend Lee would not be terminated for no reason at all, but that he could be terminated for cause. And that gets us right back to the issue that's before this Court, whether or not the Court can substitute its judgment for the judgment of the church as it relates to questions of spiritual leadership. Was this summary judgment or dismissal? This is summary judgment, Your Honor. And what depositions, what discovery was done? Your Honor, Reverend Lee was deposed. The deacons of the church were deposed. There were, I believe, a full document exchange. Now he's the one who moved for summary judgment, correct? That's correct, Your Honor. Did you ever move for summary judgment? No, Your Honor, we did not. I've never seen a case where a court has entered summary judgment in favor of a party that never requested it unless they follow Rule 56. And that's what the court did here. So the district court under Rule 56 saw that the briefing was requiring it to interpret matters of religious belief. And so at that point it ordered the parties to brief an orally argued issue. It gave the parties the opportunity to present evidence and gave the parties the opportunity to present responses. And gave notice under Rule 56 that it was going to decide that way. That's correct, Your Honor. And that's what the court did. And there was full briefing on the motion for summary judgment and on the motion as it regarded the court's question regarding the ministerial exception. Why did they raise the ministerial exception as an affirmative defense? Why was it not raised? Your Honor, I think in part because the church saw the contract claim as very weak and I think you see that in district court's opinion that the construction of the contract claim requires reading out the provision that allows for material breach, reading out the language that allows other rights provided by law for termination, and inserting the word only to modify the last two types of cause. And so the church saw it as a very weak claim. But you didn't mind putting the issue of whether it should be hired or fired before the court on the merits without the ministerial exception, correct? Your Honor, I think that the church would have been well advised to raise the issue earlier. But when it didn't, should we say, well, then they really didn't think that there was going to be entanglement here and they would decide it based on the merits of the contract, which maybe Hosanna Tabor would say it's up to the parties to decide that. Your Honor, two points on that. So first, it's not been raised to this court. So I think that's a more difficult question. And that has not been briefed. It's not been raised to this court, the issue of waiver. But we did footnote the fact that it was never raised as an affirmative defense. That's correct, Your Honor. But there was no arguing. And this court has said putting something in a footnote is not sufficient to brief the issue. If the court would like supplemental briefing on it, we'd be happy to provide it. But the second issue is, as the Conlon v. InterVarsity case determined in the Sixth Circuit, the ministerial exception is a structural right. So it has a personal component to it. It has a structural component to it. And you see this in the Petruska decision. The Petruska decision talks about the personal component as the element that could potentially be waived. But the structural component is regardless of whether the parties explicitly contracted away a right, this court still could not get involved. And that's what the Tomek decision said out of the Seventh Circuit. And for language purposes, when you talk about personal component and structural component, are you saying the personal component is the free exercise component and the structural is the entanglement? No, Your Honor. So that's how Petruska analyzed the issue, but that was superseded by – But explain to me when you use those words, what you're telling me, what constitutes the personal component as opposed to the structural component? So I think the personal component is the church's free choice, right? And so that was articulated in Hosein et al. Primarily it's a free exercise issue. And so in a contract, you could potentially imagine a situation where the church makes the free choice about the relationship with the minister, but not the structural component. The structural component is the question of entanglement, is the question of noninterference. Isn't that what I just said? Didn't I just say – maybe I misspoke, but I thought I said – Are you saying the personal component is the free exercise part and the structural is entanglement? Oh, and that's the part that I wanted to clarify, Your Honor. The Supreme Court did not break out the noninterference piece, the nonentanglement piece, as being solely a matter of Establishment Clause jurisprudence. In fact, this court in the Askew case expressly found that nonentanglement is a matter of both the free exercise clause and the Establishment Clause. So Hosein et al. broadened the right of nonentanglement, and the Askew case recognized that. And that was at 684 F. 3rd. 420, where it specifically talks about that. And I think you see that, too, in the way the court is talking about noninterference, both in Hosein et al. and in Askew, where it's a very, very hands-off matter. Can't we just rely on one or not the other? If we were to rule in your favor, couldn't we just say this would require entanglement? Your Honor, you can rule either way. The church did not freely contract to allow Reverend Lee to receive $2.6 million from the church. That's not the contract that's before this court. And so the court can find, under the ministerial exception, that his claim is barred under precisely the same analysis that was in Hosein et al. regarding interference with the choice of the church. But also this court could find that kind of that secondary portion of the analysis where you're going to be getting into entanglement with the deciding religious matters, right? A civil trial where you're calling witnesses and you're assessing plausibility, this is precisely what Justice Alito and Kagan in their concurrence discussed and said is going to require the court, the civil court and juries, to decide religious questions. And tell us, give us an example how that plays out because you gave two, there were three reasons offered in the record. One is the numbers of contributions decreased and there was overspending and there was a decrease in membership. Those categories are just pure numbers. How would that, and I know we have the failure to give spiritual leadership, put that aside for a second, how would those two grounds for termination play out in causing the court to have to be entangled in deciding the bona fides of those bases? Well, and so the way it would work, right, is the church has said, in our judgment, when we saw these facts in the ground, we saw bad spiritual leadership. And so we made the determination that we weren't evangelizing, we weren't transforming the community for Christ in ways that we needed to, we weren't attracting new souls to Christ in the way that we needed to. So this is a manifestation of it, the decrease in numbers, was a manifestation of the spiritual failings. Exactly, Your Honor. And so the Matthew 28 provision that you cited to earlier, Your Honor, was the church's recognition we have a mission to accomplish this goal and because we're not accomplishing that goal, we're failing as a matter of our spiritual mission to the church and so we have failed spiritual leadership. And then what Reverend Lee would seek to do and seek to have a civil court do is have witnesses come into court and say, well, that wasn't their real reason. Really, they weren't motivated by that. And this is precisely what Justice Alito and Kagan get to. They say to gauge the plausibility and credibility of those arguments, you're going to have to address questions of religious doctrine and religious mission. Do they really care about Matthew 28? Is that really connected to the decision that they made to terminate? So your position is it would put the court in the business of evaluating whether the reason was pretextual, which is, I think, language that Justice Alito and Justice Kagan said we should be outside of. The majority opinion expressly said, or the unanimous opinion expressly said, that no pretext analysis is permitted. And then Justice Alito and Kagan explained why. They elaborate on why. So when you're in the situation where the church has preserved the right to terminate for a cause, as we have here, so the narrow issue that's before this court is termination for a cause, where they have preserved that right, there's no opportunity to look behind the church's determination. That's not a question that gets to be asked. In fact, the Bell case out of the Fourth Circuit in 1999 expressly talked about this, where the determination there was made solely in financial terms. It was wholly a financial decision of the religious institution. And the court said, we can't look behind that. It doesn't matter that it was a non-religious determination, a secular determination. The Hosanna Tabor case says the point is to make the ministerial ecclesiastical decision and matter solely for the church's provenance. So then we get into the second part, and that is where we're talking about the entanglement issue. So if you do start looking behind it, that's where you get entangled and interfere in the church's decision making. Your Honor, I think that Judge Sack in the Fratello decision from last summer in the Second Circuit, and this is 863 F3rd at 202-03, really kind of shows part of the reasoning for this judicial shyness as it relates to the pretext analysis. And so he points out that courts lack the tools for making these kind of determinations. And he said, in the Abrahamic faiths, a stammering Moses was chosen to lead the people, and a scrawny David was chosen to slay a giant. And looking at those from secular criteria, those may not have been the best choices. But Judge Sack's point was, that's not the kind of determination that a secular civil court could make. And I think that consistent with, and that was interpreting the Hosanna-Tabor analysis, that consistent with why courts have stayed out of this space across the board. Your Honor, I think just a couple more quick points. My friend on the other side says that this issue is not about termination, a reinstatement. Neither was Hosanna-Tabor. That wasn't a reinstatement case. That issue was off the table. It was about financial damages the religious body would have received for wrongdoing. And so that question isn't at issue here. I think another concern with accepting the analysis that issues of membership, issues of tithing, are somehow nonreligious matters that a court can look behind. Again, I think Askew addresses that and says, you know, what's good for the church is inherently a question that the church can answer, or that the civil courts can answer. But it also gives what the church here, what Sixth Mountain Zion would say is an impoverished view of religion. A big part of their religious exercise isn't just preaching. It isn't just baptisms. It's also doing things like running the food kitchen. They're motivated by verses like Isaiah 56 that says the religious duties, the fast that God chooses,  And so if we accept the view that says only what's said from the pulpit is something that courts can't look behind, we're diminishing the ability for religious exercise to be a fully orbed thing. And we restrict the sphere of religious autonomy that, as this court recognized recently, is woven into the fabric of the First Amendment. Your Honor, I think that we have a narrow case. This case just deals with the four-cause determination by the church. On a strong record, after a nine-month investigation, two church meetings, and a 16-page determination about why Reverend Lee's leadership was insufficient. But it is a very, very important case because this case goes to that fundamental First Amendment value of separating church and state and protecting the different spheres of autonomy in those instances. If there are no further questions, Your Honor, thank you for your time. Thank you. I'd like to make three points in rebuttal. Sure. The first one is you still didn't hear any specific religious reason he was terminated. There were numbers, as Your Honor said, that show lack of attendance, et cetera. And there was a manifestation. As a result of those numbers, it was determined that he lacked spiritual leadership. And maybe this lack of spiritual leadership was the cause of those numbers. I mean, that was the reason that the numbers were a manifestation of people were staying away, people weren't giving. Something gave rise to that. And is it up to us to make an inquiry into why they didn't want him and weren't drawn to him as a minister? Your Honor, the issue is whether or not it was for just cause or not for cause. And if the issue is we were not drawn to him because of the way he ministered, then that would be not for cause. And that's an important distinction. How can you say that? I mean, the contract interpreted the church bylaws and the church constitution and all of those requirements. And there's, of course, I guess you could call it pre-approval of the contract for all evidence where he represents the congregation, according to the record, that he understood that if he wasn't servicing them in the way they wanted, it would be reason to terminate. Well, because of this, Your Honor. First, if you assume that they may enter into a contract, that the minister can enter into a contract with the church, and this contract says Pennsylvania law is going to apply and that we're entitled, you're entitled, we can fire you for any cause as defined by law, by Pennsylvania law. Pennsylvania law would not define a cause for termination to be anything that would entangle, anything that would be religious, because the courts would never get involved in that. So by definition, any cause related to his inability to minister would be not for cause. It would just be, we're not going to get involved in that because it can't be determined. So if the church is, and we have to just continue to hold on to this particular, I'm talking about your client, but you have to hold on to such a person. No, just the opposite. The contract, specifically, they volunteer, the church volunteers. So I have to know, that's right, it would be without cause termination, please pay me my 20 years worth of salary minus whatever I earned. That's exactly my point, Your Honor. I see. So if he doesn't fulfill the job description that he was hired for, because the ministerial session wouldn't allow a court to adjudicate it, he should get compensated. That would be our position, Your Honor. And I think that that makes sense if you read the contract. And if you say that ministers can contract, and they come in and say, we can fire you for any reason that the law allows us to fire you for. This would not be one of them. And very simply, that's what the trial would be about. Is this for cause or is this not for cause? Are these numbers correct or not? And Reverend Lee could come back and say, you know, they never took attendance before I got there. They were mismanaging funds, and I pointed those things out to them, and when I did, they stopped giving. Those are not religious doctrine issues. And, again, if somebody would be saying we're, you know, it's so much, you don't want him as your minister, but guess what? You've got to have it. Not at all, Your Honor. And that's what Hosanna Tabor says. Hosanna Tabor says that absent a contract, you can't come into court and enforce the laws of Pennsylvania or any state relating to employment. But if you have a contract, we're going to be silent on it. And Petroska says if you make a promise and you're a church, you have every right, just like any other citizen, to voluntarily accept the laws of Pennsylvania or any state and make a contract. Except we don't know if there needs to be an ecclesiastical inquiry. Here, we know there is an ecclesiastical inquiry. The district judge said I cannot decide this case. I have concern that I can't decide this case without entanglement. Tell me about it. And so that issue was presented, and the district judge determined that, yes, there would be entanglement. And it's excess entanglement, Your Honor. And the reason it's excessive entanglement is the issue rather than entanglement, any time there's a minister and a church involved, there, of course, has to be entanglement. In the property setting, it wouldn't be a problem.  And Reverend Lee stood up in court, and they wanted to evict him when they fired him, and Reverend Lee stood up and said I'm not leaving because the Holy Spirit says I need to stay here. This court wouldn't entertain that as being excessive entanglement. But that's not the congregation determining who will be their minister, as Hosanna said. And this is not determining who will be their minister. This is the church saying if you leave, here are the parameters by which we will pay you or not pay you. But the point of Hosanna Tabar was about, I believe that was the case that talked about, even if it's going to be a damages compensation and not reinstated, that still impinges on the church's existence. It does, Your Honor, but that's because the state imposes those damages. That is, the state confers on your Title VII, your Title II, your statement, your title of back payment. Your contract, if you were to prevail, it would impose the same consequence. It's just a different mechanism. In one, it's by statute. In the second, it's by contract. The consequence, though, is the same. It's requiring a religious entity to take an action that may be contrary to its governance, in this instance, pay a million plus or whatever the dollar amount might be if you do the math. You're right, Your Honor, and that's the voluntary nature of what happened here, which is the difference. And what Petroska recognized, again, Petroska had that very issue, Title VII and contract. And Petroska said you can't go forward with something where the government is forcing you to pay damages, but if you agree to pay damages, we're going to allow you to pursue that. And I think that's a very major difference. And, of course, the Supreme Court recognized that as well and said we're not going to entertain that issue because it's a very different issue. And now it's in front of this panel. Okay. Well, thank you for the arguments. Thank you, Your Honor. All right. Like our earlier panel, we thank counsel for their fine briefing and excellent arguments.